IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANNY LEE JORGENSON,<br><br>　　　　Petitioner,<br><br>v.<br><br>BEN CURRY,<br><br>　　　　Respondent.<br>_____ | No. C 08-04662 SBA (PR)<br><br>**ORDER DENYING PETITION FOR<br>WRIT OF HABEAS CORPUS** |

## INTRODUCTION

Petitioner Danny Lee Jorgenson, an inmate at the California Training Facility in Soledad, California, filed this pro se petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, in which he challenges the denial of parole by the California Board of Parole Hearings ("Board) in 2007. Respondent Ben Curry, Warden of the California Training Facility, opposes the petition. Petitioner has filed a traverse. The matter is now submitted for the Court's consideration of the merits of the petition. For the reasons discussed below, the petition is DENIED.

## PROCEDURAL BACKGROUND

In 1991, Petitioner was convicted of first-degree murder and the use of a weapon in Riverside County Superior Court, and he was sentenced to a term of twenty-seven years to life in state prison. In 2007, the Board found Petitioner unsuitable for parole at his first parole hearing, and determined that he would not receive his next parole hearing for five years. Petitioner challenged the denial of parole in all three levels of the California courts. His habeas petitions were summarily denied by the Riverside County Superior Court on November 13, 2007, the California Court of Appeal on January 23, 2008, and the California Supreme Court on July 16, 2008. (Resp't Exs. 2, 4, 6.) On October 8, 2008, Petitioner filed the instant federal petition.

The Board summarized the facts if the commitment offense based on reports prepared for the parole hearing, as follows:

> On Labor Day Weekend, September 1st, 1989, through September 5th 1989, Danny

> Jorgenson, the defendant, burglarized his parents' [] residence at 28064 Palm Villa Drive in Sun City. He stole a .25-caliber semi-automatic handgun and ammunition for the gun. The officers investigating the burglary found six expended casings on Jorgenson's parents' patio. A bottle of Peachtree Schnapps, (Jorgenson's favorite drink), was left in his parents' residence as well as two cans of Budweiser beer. A latent fingerprint was lifted from one of the cans of beer, and it was determined to be Jorgenson's fingerprint. On September 2, 1989, Ernest Adams went on a date with Sheryl Thorpe, the victim in this case. Adams said that Jorgenson [] came by and got into a verbal argument with Thorpe. Jorgenson yelled, 'You're dead bitch.' On September 3rd, 1989, at 5:40 a.m., Thorpe was found on the floor of the kitchen where she worked at Sun City Garden Retirement Home at 28500 Bradley Road in Sun City by a coworker. Thorpe had been shot six times with a 25-caliber automatic – semi-automatic handgun. She had last been seen by a different coworker at 5:00 a.m., preparing the breakfast for the people who live at the retirement home. Thorpe was subsequently pronounced dead at the scene. Coworkers had seen bruises on Thorpe's – on Thorpe throughout the past two years. Thorpe had said that Jorgenson had beat her up, and Jorgenson would visit her often undetected by security cameras at her place of employment. On September 5th, 1989, Jorgenson asked a neighbor for a ride to 215 – to the 215 Freeway. He wanted to go up north. The neighbor said he 'looked like a man on the run.' On September 6th, 1989, Mickey Owens was interviewed. He said one month earlier Jorgenson asked – had asked him to buy a gun that he could use as a throwaway gun. He thought Jorgenson was going to harm a bartender at The American Legion, so he refused to buy him a gun. A short time later he heard Jorgenson say to Thorpe at the bar, "I'm going to kill you, bitch.' The autopsy revealed that Thorpe was killed by multiple gunshot wounds caused by a 25-caliber semi-automatic handgun. A bench warrant was subsequently issued for Jorgenson's arrest. One year later, September 16th, 1990, the defendant was arrested in Florida.

(Pet. Ex. A at 21-24.)

## STANDARD OF REVIEW

**I.     AEDPA**

Under the Antiterrorism and Effective Death Penalty Act (AEDPA), a district court may grant a petition challenging a state conviction or sentence on the basis of a claim that was "adjudicated on the merits" in state court only if the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). Section 2254(d) applies to a habeas petition from a state prisoner challenging the denial of parole. See Sass v. Cal. Bd. of Prison Terms, 461 F.3d 1123, 1126-27 (9th Cir. 2006).

A state court has "adjudicated" a petitioner's constitutional claim "on the merits" for purposes of § 2254(d) when it has decided the petitioner's right to post-conviction relief on the basis of the substance of the constitutional claim advanced, rather than denying the claim on the basis of a procedural or other rule precluding state court review on the merits. Lambert v. Blodgett, 393 F.3d 943, 969 (9th Cir. 2004). It is error for a federal court to review de novo a claim that was adjudicated on the merits in state court. See Price v. Vincent, 538 U.S. 634, 638-43 (2003).

### A.    Section 2254(d)(1)

Challenges to purely legal questions resolved by the state court are reviewed under § 2254(d)(1), under which a state prisoner may obtain habeas relief with respect to a claim adjudicated on the merits in state court only if the state court adjudication resulted in a decision that was "contrary to" or "involved an unreasonable application of" "clearly established Federal law, as determined by the Supreme Court of the United States." Williams (Terry) v. Taylor, 529 U.S. 362, 402-04, 409 (2000). While the "contrary to" and "unreasonable application" clauses have independent meaning, see id. at 404-05, they often overlap, which may necessitate examining a petitioner's allegations against both standards. See Van Tran v. Lindsey, 212 F.3d 1143, 1149-50 (9th Cir. 2000), overruled on other grounds; Lockyer v. Andrade, 538 U.S. 63, 70-73 (2003).

#### 1.    Clearly Established Federal Law

"Clearly established federal law, as determined by the Supreme Court of the United States" refers to "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." Williams, 529 U.S. at 412. "Section 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence." Id. "A federal court may not overrule a state court for simply holding a view different from its own, when the precedent from [the Supreme] Court is, at best, ambiguous." Mitchell v. Esparza, 540 U.S. 12, 17 (2003). If there is no Supreme Court precedent that controls on the legal issue raised by a petitioner in state court, the state court's decision cannot be contrary to, or an unreasonable application of, clearly-established federal law. See, e.g., Stevenson v. Lewis, 384 F.3d 1069, 1071 (9th Cir. 2004).

The fact that Supreme Court law sets forth a fact-intensive inquiry to determine whether

constitutional rights were violated "obviates neither the clarity of the rule nor the extent to which the rule must be seen as 'established'" by the Supreme Court. Williams, 529 U.S. at 391. There are, however, areas in which the Supreme Court has not established a clear or consistent path for courts to follow in determining whether a particular event violates a constitutional right; in such an area, it may be that only the general principle can be regarded as "clearly established." Andrade, 538 U.S. at 64-65. When only the general principle is clearly established, it is the only law amenable to the "contrary to" or "unreasonable application of" framework. See id. at 73.

Circuit decisions may still be relevant as persuasive authority to determine whether a particular state court holding is an "unreasonable application" of Supreme Court precedent or to assess what law is "clearly established." Clark v. Murphy, 331 F.3d 1062, 1070-71 (9th Cir.), cert. denied, 540 U.S. 968 (2003); Duhaime v. Ducharme, 200 F.3d 597, 600 (9th Cir. 1999).

### 2. "Contrary to"

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 413. A "run-of-the-mill state-court decision" that correctly identifies the controlling Supreme Court framework and applies it to the facts of a prisoner's case "would not fit comfortably within § 2254(d)(1)'s 'contrary to' clause." Id. at 406. Such a case should be analyzed under the "unreasonable application" prong of § 2254(d). See Weighall v. Middle, 215 F.3d 1058, 1062 (9th Cir. 2000).

### 3. "Unreasonable Application"

"Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413.

"[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411; accord

4

Middleton v. McNeil, 541 U.S. 433, 436 (2004) (per curiam) (challenge to state court's application of governing federal law must be not only erroneous, but objectively unreasonable); Woodford v. Visciotti, 537 U.S. 19, 25 (2002) (per curiam) ("unreasonable" application of law is not equivalent to "incorrect" application of law).

Evaluating whether a rule application was unreasonable requires considering the relevant rule's specificity; if a legal rule is specific, the range of reasonable judgment may be narrow; if it is more general, the state courts have more leeway. Yarborough v. Alvarado, 541 U.S. 652, 664 (2004). Whether the state court's decision was unreasonable must be assessed in light of the record that court had before it. Holland v. Jackson, 542 U.S. 649, 651 (2004) (per curiam).

The "objectively unreasonable" standard is not a clear error standard. Andrade, 538 U.S. at 75-76 (rejecting Van Tran's use of "clear error" standard); Clark, 331 F.3d at 1067-69 (acknowledging the overruling of Van Tran on this point). After Andrade, "[t]he writ may not issue simply because, in our determination, a state court's application of federal law was erroneous, clearly or otherwise. While the 'objectively unreasonable' standard is not self-explanatory, at a minimum it denotes a greater degree of deference to the state courts than [the Ninth Circuit] ha[s] previously afforded them." Id. In examining whether the state court decision was unreasonable, the inquiry may require analysis of the state court's method as well as its result. Nunes v. Mueller, 350 F.3d 1045, 1054 (9th Cir. 2003).

**B.    Section 2254(d)(2)**

A federal habeas court may grant the writ if it concludes that the state court's adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). An unreasonable determination of the facts occurs where the state court fails to consider and weigh highly probative, relevant evidence, central to the petitioner's claim, that was properly presented and made part of the state court record. Taylor v. Maddox, 366 F.3d 992, 1005 (9th Cir. 2004). A district court must presume correct any determination of a factual issue made by a state court unless the petitioner rebuts the presumption of correctness by clear and convincing evidence. 28 U.S.C. §

2254(e)(1).

## II. California Law Governing Parole for Murderers

A Board panel meets with an inmate one year before the prisoner's minimum eligible release date "and shall normally set a parole release date . . . . The release date shall be set in a manner that will provide uniform terms for offenses of similar gravity and magnitude in respect to their threat to the public, and that will comply with the sentencing rules that the Judicial Council may issue and any sentencing information relevant to the setting of parole release dates." Cal. Pen. Code § 3041(a). Significantly, that statute also provides: The panel shall set a release date,

> unless it determines that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration for this individual, and that a parole date, therefore, cannot be fixed at this meeting.

Id. § 3041(b).

One of the implementing regulations, Title 15 of the California Code of Regulations, section 2401 provides: "A parole date shall be denied if the prisoner is found unsuitable for parole under Section 2402(c). A parole date shall be set if the prisoner is found suitable for parole under Section 2402(d). A parole date set under this article shall be set in a manner that provides uniform terms for offenses of similar gravity and magnitude with respect to the threat to the public." The regulation also provides that "[t]he panel shall first determine whether the life prisoner is suitable for release on parole. Regardless of the length of time served, a life prisoner shall be found unsuitable for and denied parole if in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison." 15 Cal. Code Regs. § 2402(a).

In making its determination, the Board may consider "[a]ll relevant, reliable information available," including,

> the circumstances of the prisoner's social history; past and present mental state; past criminal history, including involvement in other criminal misconduct which is reliably documented; the base and other commitment offenses, including behavior before, during and after the crime; past and present attitude toward the crime; any conditions of treatment or control, including the use of special conditions under which the prisoner may safely be released to the community; and any other information which bears on the prisoner's suitability for release.

> Circumstances which taken alone may not firmly establish unsuitability for parole may contribute to a pattern which results in finding of unsuitability.

Id. § 2402(b).

Circumstances tending to show unsuitability for parole include the nature of the commitment offense, and consideration of whether "[t]he prisoner committed the offense in an especially heinous, atrocious or cruel manner." Id. § 2281(c). This includes consideration of the number of victims, whether "[t]he offense was carried out in a dispassionate and calculated manner," whether the victim was "abused, defiled or mutilated during or after the offense," whether "[t]he offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering," and whether "[t]he motive for the crime is inexplicable or very trivial in relation to the offense." Id. Other circumstances tending to show unsuitability for parole are a previous record of violence, an unstable social history, previous sadistic sexual offenses, a history of severe mental health problems related to the offense, and serious misconduct in prison or jail. See id.

Circumstances tending to support a finding of suitability for parole include no juvenile record, a stable social history, signs of remorse, that the crime was committed as a result of significant stress in the prisoner's life, a lack of criminal history, a reduced possibility of recidivism due to the prisoner's present age, that the prisoner has made realistic plans for release or has developed marketable skills that can be put to use upon release, and that the prisoner's institutional activities indicate an enhanced ability to function within the law upon release. See id. § 2281(d).

The regulations also contain a matrix of suggested base terms that prisoners with indeterminate sentences should serve before they are released on parole. The matrix provides three choices of suggested "base terms" for several categories of crimes. See 15 Cal. Code Regs. § 2403. If, as in Petitioner's case, the base offense is one count of first-degree murder with the use of a dangerous weapon (firearm), the matrix of base terms ranges from a low of 29-31 years, to a high of 30-32 years, depending on some of the facts of the crime.[1] See id. § 2403(b). Although the matrix is

---

[1] One axis of the matrix concerns the relationship between murderer and victim and the other axis of the matrix concerns the circumstances of the murder. The choices on the axis for the

to be used to establish a base term, this occurs only once the prisoner has been found suitable for parole. See id. § 2403(a).

The statutory scheme places individual suitability for parole above a prisoner's expectancy in early setting of a fixed date designed to ensure term uniformity. In re Dannenberg, 34 Cal.4th 1061, 1070-71 (2005).

> While subdivision (a) of section 3041 states that indeterminate life (i.e., life-maximum) sentences should "normally" receive "uniform" parole dates for similar crimes, subdivision (b) provides that this policy applies "*unless* [the Board] determines" that a release date cannot presently be set because the particular offender's crime and/or criminal history raise "*public safety*" concerns requiring further indefinite incarceration. (Italics added.) Nothing in the statute states or suggests that the Board must evaluate the case under standards of term uniformity before exercising its authority to deny a parole date on the grounds the particular offender's criminality presents a *continuing public danger*.

Id. at 1070 (emphasis, brackets and parenthesis in original). Indeed, the very regulation that includes the matrix states that "[t]he panel shall set a base term for each life prisoner who is found suitable for parole." 15 Cal. Code Regs. § 2403(a) (emphasis added). "[T]he Board, exercising its traditional broad discretion, may protect public safety in each discrete case by considering the dangerous implications of a life-maximum prisoner's crime individually." Dannenberg, 34 Cal. 4th at 1071 (emphasis added).

The California Supreme Court's determination of state law is binding in this federal habeas action. See Hicks v. Feiock, 485 U.S. 624, 629 (1988).

**DISCUSSION**

Petitioner's grounds for federal habeas relief are that (1) he has a liberty interest in release on parole that is protected by due process and that was violated by the Board's denial of parole because the Board improperly used a "some evidence" standard, there was not "some evidence" of his current dangerousness, the denial of parole was based solely on the commitment offense, and there

---

relationship of murderer and victim are "participating victim," "prior relationship," "no prior relationship," and "threat to public order or murder for hire." The choices on the axis for the circumstances of the murder are "indirect," "direct or victim contribution," "severe trauma," or "torture." Each of the choices are further defined in the matrix. See 15 Cal. Code Regs. § 2403(b).

8

was not "some evidence" supporting the decision to deny him another parole hearing for five more years; and (2) the Board's failure to set a date for his release on parole violated his right to equal protection.

### 1. Due Process

The Due Process Clause does not, by itself, entitle a prisoner to release on parole in the absence of some evidence of his or her current dangerousness. Hayward v. Marshall, 603 F.3d 546, 555, 561 (9th Cir. 2010) (en banc). Under California law, however, "some evidence" of current dangerousness is required in order to deny parole. Id. at 562 (citing In re Lawrence, 44 Cal.4th 1181, 1205-06 (2008) and In re Shaputis, 44 Cal.4th 1241 (2008)). Petitioner is correct that this requirement gives California prisoners a liberty interest protected by the federal constitutional guarantee of due process in release on parole in the absence of "some evidence" of their current dangerousness. Cooke v. Solis, 606 F.3d 1206, 1213 (9th Cir. 2010) (citing Hayward, 603 F.3d at 561-64); Pearson v. Muntz, 606 F.3d 606, 609-10 (9th Cir. 2010) (per curiam) (also citing Hayward, 603 F.3d at 562-63).

When a federal habeas court in this circuit is faced with a claim by a California prisoner that their right to due process was violated because the denial of parole was not supported by "some evidence," the court "need only decide whether the California judicial decision approving the governor's decision rejecting parole was an 'unreasonable application'[] of the California 'some evidence' requirement, or was 'based on an unreasonable determination of the facts in light of the evidence.'" Hayward, 603 F.3d at 562-63 (quoting 28 U.S.C. § 2254(d)(1)-(2)); Cooke, 609 F.3d at 1209. California's "some evidence" requirement was summarized in Hayward as follows:

> As a matter of California law, 'the paramount consideration for both the Board and the Governor under the governing statutes is whether the inmate currently poses a threat to public safety.' There must be 'some evidence' of such a threat, and an aggravated offense 'does not, in every case, provide evidence that the inmate is a current threat to public safety.' The prisoner's aggravated offense does not establish current dangerousness 'unless the record also establishes that something in the prisoner's pre- or post- incarceration history, or his or her current demeanor and mental state' supports the inference of dangerousness. Thus, in California, the offense of conviction may be considered, but the consideration must address the determining factor, 'a current threat to public safety.'

9

1 Hayward, 603 F.3d at 562 (quoting Lawrence, 44 Cal.4th. at 1191, 1210-14); see Cooke, 609 F.3d at

2 1213-14 (describing California's "some evidence" requirement).

3     Here, there was certainly evidence to support the Board's finding that the commitment offense was "abusive" and "dispassionate" insofar as Petitioner told the victim he would kill her in the days before he killed her, he stole a gun from his parents' house, went to the victim's workplace at a time when there would be few witnesses, and shot her twice in the front and four more times in the back. (Pet. Ex. A at 116-17.) Under California law, such a brutal killing alone can amount to "some evidence" of current dangerousness because at the time of the parole decision Petitioner was well short of the suggested base term of his sentence – he had only served seventeen years of his sentence of twenty-seven years to life. Cf. Lawrence, 44 Cal.4th at 1211 (holding that circumstances of commitment offense alone are "rarely" sufficient to deny parole after inmate has served his base term).

    Nevertheless, contrary to Petitioner's contention, the denial of parole was based on other evidence of his current dangerousness in addition to the facts of his commitment offense. There was evidence that Petitioner had been beating the victim over a substantial period of time before he killed her, and he also had been arrested previously for criminal behavior. (Pet. Ex. A at 118-19.) Although alcohol was a major factor in the commitment offense, Petitioner had left the Alcoholics Anonymous and Narcotics Anonymous programs at the prison, and he had an unfavorable evaluation by a psychologist who found him to be a moderate to medium risk of violence. (Id. at 119-21.) This evidence, along with the commitment offense, was more than sufficient to constitute "some evidence" that Petitioner would be a danger to society if paroled at his 2007 hearing.

    The same evidence relied upon to deny parole also constitutes "some evidence" that a new parole hearing would not be necessary for five more years, at which point Petitioner would still be far from his suggested base term of twenty-seven years. In addition, Petitioner's claim that the Board improperly used a "some evidence" standard to deny him parole is not supported by the record insofar as there is nothing in the Board's decision indicating that they used such a standard in reaching their decision. (Pet. Ex. A at 115-25.) .

The state courts, in upholding the Board's decision, reasonably applied California's "some evidence" requirement and reasonably determined the facts in light of the evidence in the record. See Hayward, 603 F.3d at 563. The state courts' denial of Petitioner's federal due process claims was neither contrary to nor an unreasonable application of clearly established federal law, and Petitioner is not entitled to habeas relief on those claims.

**2.     Equal Protection**

Petitioner contends that the denial of parole violated his right to equal protection because he is being treated differently than another inmate named Mikael Schiold. According to Petitioner, Mr. Schiold was a California prisoner who obtained a "settlement agreement" with the State of California under which he was "transferred to" Sweden where he was to be held in custody until January 1, 2007. Petitioner complains that he is being discriminated against because, unlike Mr. Schiold, Petitioner is not being transferred to another country and has not been given a date for his release from custody.

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." City of Cleburne v. Cleburne Living Center, 473 U.S. 432, 439 (1985) (quoting Plyler v. Doe, 457 U.S. 202, 216 (1982)). The allegations in the petition establish that Petitioner is not "similarly situated" to Mr. Schiold in that Mr. Schiold was granted parole by the Board and Petitioner was not. Moreover, Mr. Schiold is a foreign national and Petitioner is not. There is no indication or allegation that any foreign country has any interest in receiving Petitioner into their custody and then releasing him at any particular date, as was the case with Mr. Schiold. As Petitioner is not similarly situated to Mr. Schiold, the fact that he is not receiving the same treatment as Mr. Schiold does not amount to a violation of his right to equal protection.

## CONCLUSION

The petition for a writ of habeas corpus is DENIED.

Rule 11(a) of the Rules Governing Section 2254 Cases now requires a district court to rule

on whether a petitioner is entitled to a certificate of appealability in the same order in which the petition is denied. Petitioner has failed to make a substantial showing that his claims amounted to a denial of his constitutional rights or demonstrate that a reasonable jurist would find the denial of his claim debatable or wrong. Slack v. McDaniel, 529 U.S. 473, 484 (2000). Consequently, no certificate of appealability is warranted in this case.

The Clerk of the Court shall enter judgment in accordance with this Order, terminate all pending motions, and close the file.

IT IS SO ORDERED.

DATED: 9/1/10

SAUNDRA BROWN ARMSTRONG
United States District Judge

UNITED STATES DISTRICT COURT
FOR THE
NORTHERN DISTRICT OF CALIFORNIA

DANNY LEE JORGENSON,

|   |   |
|---|---|
| Plaintiff, | Case Number: CV08-04662 SBA |
| v. | **CERTIFICATE OF SERVICE** |
| BEN CURRY et al, | |
| Defendant. | |

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on September 2, 2010, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Danny L. Jorgenson H05330
Salinas Valley State Prison
P.O. Box 689
Soledad, CA 93960

Dated: September 2, 2010

Richard W. Wieking, Clerk
By: LISA R CLARK, Deputy Clerk

P:\PRO-SE\SBA\HC.08\Jorgenson4662.denyHC.wpd        13